UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————

Nº 11-CV-1938 (JFB)

———————————

RANDY WILENS,

Petitioner,

VERSUS

SUPERINTENDENT OF CLINTON CORRECTIONAL FACILITY,

Respondent.

———————————

**MEMORANDUM AND ORDER**
December 31, 2013

———————————

JOSEPH F. BIANCO, District Judge:

Randy Wilens ("Petitioner") petitions this Court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his October 25, 2005 conviction in state court. Under Suffolk County Indictment Number 1020-2005, Petitioner was charged with two counts of Course of Sexual Conduct Against a Child in the First Degree (N.Y. Penal Law § 130.75(1)(a)), two counts of Course of Sexual Conduct Against a Child in the Second Degree (N.Y. Penal Law § 130.80(1)(a)), three counts of Sexual Abuse in the First Degree (N.Y. Penal Law § 130.65(3)), and five counts of Endangering the Welfare of a Child (N.Y. Penal Law §260.10(1)). Petitioner pled guilty to the indictment and was sentenced, as a prior felony offender, to an aggregate term of fourteen years' incarceration with five years post-release supervision ("PRS").

Petitioner now challenges his conviction, arguing that: (1) his Fourteenth Amendment due process rights were violated because he was not informed of the mandatory post-release supervision ("PRS") as a component of his sentence; (2) he received ineffective assistance of counsel when his attorney failed to advise him of PRS accompanying the sentence, failed to object to duplicate counts in the indictment, and failed to file an appeal; (3) his allocution was insufficient to support a conviction for the crimes alleged; and (4) the District

Attorney committed *Brady* and *Rosario* violations by failing to disclose Family Court findings and medical reports related to the case.

For the reasons set forth herein, the Court finds that Petitioner has not demonstrated any basis for habeas relief. Most of Petitioner's claims are procedurally barred. In any event, all of Petitioner's claims fail on the merits. The Court, therefore, denies the petition in its entirety.

## I. BACKGROUND

### A. Facts

#### 1. The Plea

On August 30, 2005, Petitioner entered a plea before the Honorable Michael Mullen. Under advice of counsel, Petitioner was sworn in (P. 4),[1] and affirmed that he freely entered his guilty plea while waiving his constitutional and statutory trial rights. (P. 5-6.) Petitioner allocated to his guilt on the offenses charged, admitting that: (1) at least three times within a three month period between 2002 and 2004, he subjected a female child, who was less than eleven years of age, to sexual contact and sexual intercourse for his sexual gratification (*id.* at 7-8); (2) between September 2003 and July 2004, on three occasions within a three month period, at his residence in Suffolk County, he had sexual contact with a male child, who was less than eleven years of age, including one incident of oral sexual conduct (*id.* at 9-10); (3) at his residence in Suffolk County, in July 2004, he had sexual intercourse with a male, who was less than eleven years of age, for his own sexual gratification (*id.* at 11-12); (4) he had sexual contact with another male who was less than eleven years of age for his own sexual gratification (*id.* at 12-13); (5) he twice exposed himself to a female less than seventeen years of age (*id.* at 15-16); (6) in October 2004, at a house in Suffolk County, he had sexual contact with a female, who was under eleven years of age, for his own sexual gratification (*id.* at 13-14); (7) at a house in Suffolk County, in the autumn of 2004, he played pornographic video tapes for a minor under eleven years of age (*id.* at 14); (8) in the autumn of 2004, he displayed lewd images from his cell phone to a child under seventeen years of age (*id.* at 14-15); and (9) he endangered the physical, mental, and moral welfare of four children under seventeen years of age (*id.* at 16).

The court was satisfied with the allocution and Petitioner was found guilty of all charges which consisted of: (1) two counts of Course of Sexual Conduct Against a Child in the First Degree (N.Y. Penal Law § 130.75(1)(a)); (2) two counts of Course of Sexual Conduct Against a Child in the Second Degree (N.Y. Penal Law § 130.80(1)(a)); (3) three counts of Sexual Abuse in the First Degree (N.Y. Penal Law § 130.65(3)); and (4) five counts of Endangering the Welfare of a Child (N.Y. Penal Law § 260.10(1)). (P. 16-17.)

#### 2. The Sentencing

At the sentencing hearing on October 25, 2005, Petitioner was sentenced as a Persistent Felony Offender ("P.F.O.") after admitting to a prior conviction of Sodomy in the First Degree, a class "B" felony. (S. 5-6.)[2] The court sentenced Petitioner as follows: (1) for two counts of Course of Sexual Conduct Against a Child in the Second Degree, Petitioner was sentenced to

---

[1] "P." refers to the plea transcript.

[2] "S." refers to the sentencing transcript.

two concurrent terms of seven-years' incarceration with three-years' PRS (*id.* at 9-10); (2) for two counts of Course of Sexual Conduct Against a Child in the First Degree, Petitioner was sentenced to two concurrent terms of fourteen-years' incarceration with five-years' PRS (*id.* at 10); (3) for three counts of Sexual Abuse in the First Degree, the court sentenced Petitioner to three concurrent terms of seven-years incarceration with three-years' PRS (*id.* at 10); and (4) for five counts of Endangering the Welfare of a Child, the court sentenced Petitioner to five concurrent terms of one year of incarceration. (*Id.* at 10-11.) All terms of the sentence were ordered to run concurrently.

B. Procedural History

Petitioner filed a notice of motion for sentence reduction on November 17, 2005. His court appointed defense counsel argued that, in the interest of justice, the sentence should be reduced from 14 years, to the minimum 10 years, as the imposed sentence was harsh and excessive. (Notice of Motion for Sentence Reduction, Dec. 31, 2007, Indictment Number 1020-2005.) Petitioner also wrote a letter to the Appellate Division seeking permission to file a *pro se* supplemental brief. The Appellate Division granted the request. Through his Supplemental Brief filed October 30, 2007, Petitioner claimed that his sentence was harsh and excessive and should be reduced because (1) his plea was unknowingly made, as he was not made aware of post-release supervision accompanying the plea, and (2) his counsel was ineffective for failing to raise specific *Brady* or *Rosario* material, failing to file an appeal, and failing to inform Petitioner of PRS. (Notice of Motion for Sentence Reduction—Supplemental Brief, Oct. 30, 2007, Indictment Number 1020-2005) The Appellate Division affirmed the sentence on March 4, 2008 without an opinion. *People v. Wilens*, 49 A.D.3d 570 (N.Y. App. Div. 2008). Petitioner sought leave to appeal from the Court of Appeals, which was denied. *People v. Wilens*, 10 N.Y.3d 965 (2008).

Petitioner then filed a motion under N.Y.C.P.L. § 440.10 ("Pet'r's 440 Mot.") to vacate the judgment with the Suffolk County Supreme Court, arguing that: (1) his plea was not knowingly, intelligently, and voluntarily made because he was not made aware of the PRS, thus violating his due process rights (Pet'r's 440 Mot. at 1-2); (2) he received ineffective assistance of counsel for failing to object to alleged duplicate counts on the indictment, failing to advise him of PRS, and coercing Petitioner to accept the plea agreement (*id.* at 3-4); (3) the allocution was insufficient to cover the elements of the crimes (*id.* at 2); and (4) the prosecutor committed *Brady* and *Rosario* violations for failing to disclose a finding of not guilty to a charge of abuse in Family Court. (*Id.* at 3-4.)

The Suffolk County Supreme Court denied the motion in full. *People v. Wilens*, Ind. No. 01020-2005 (Sup. Ct. Suffolk Cnty. Sept. 10, 2010). First, the court reasoned, based on the record, that Petitioner failed to show how his plea was unknowingly, unintelligently, or involuntarily made. *Id.* Furthermore, the court held that the claim was "wholly based on the record and as such not subject to review in a '440' proceeding." *Id.* (citing N.Y.C.P.L. § 440.10 (2)(c); *People v. Byrdsong*, 234 A.D.2d 468 (2d Dep't 1996)). Second, the court concluded that Petitioner failed to support his claim of ineffective assistance of counsel with any evidence other than a self-serving affidavit and was not borne out by the record. *Id.* (citing *People v. Mackenzie*, 224 A.D.2d 173 (1st Dep't 1996)). Third, the court held that "[t]he defendant's claim that the impositions of a period of five years post

3

release supervision was error requiring relief was again record based and not subject to review." *Id*. Fourth, the court held the alleged *Rosario* and *Brady* violations were presented without any evidence and had no merit. However, the court did not specifically address whether there was an insufficient allocution to cover the elements of the crimes (which had been raised in a one-sentence argument by Petitioner). *Id.* The Appellate Division denied Petitioner's certificate for leave to appeal. *People v. Wilens*, A.D. No. 2010-10180 (2d Dep't Dec. 23, 2010). Petitioner's motion to reargue the denial of leave to appeal was again denied by the Appellate Division. *People v. Wilens*, A.D. No 2010-10180 (2d Dep't Mar. 31, 2011).

Petitioner then filed a *pro se* Petition for Writ of Habeas Corpus ("Pet'r's Habeas Pet.") on August 22, 2011, raising four grounds for relief. First, Petitioner argues that his plea violated the Due Process Clause of the Fourteenth Amendment because it was not made voluntarily, knowingly, and intelligently, as he was not made aware that PRS was a component of his sentence. (Pet'r's Habeas Pet. at 1.) Second, Petitioner argues that he had ineffective assistance of counsel because his attorney failed to: (1) advise him of the direct consequences of PRS; (2) advise him of his right to appeal; (3) file an appeal; and (4) object to duplicate counts on the indictment. (*Id.* at 3.) Third, Petitioner argues that his allocution was insufficient to support the elements of the crimes charged. (*Id.* at 6.) Finally, Petitioner alleges that the prosecution committed *Brady* and *Rosario* violations by withholding certain medical records and a finding of 'Not Guilty' of abuse in his Family Court case, which related to this criminal matter. (*Id.* at 3-4) Respondent filed a memorandum of law in opposition to the petition on July 27, 2012. ("Resp. Br.") The Court has fully considered the submissions and arguments of the parties.

## II. STANDARD OF REVIEW

To determine whether a petitioner is entitled to a writ of habeas corpus, a federal court must apply the standard of review set forth in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which provides, in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "'Clearly established Federal law'" is comprised of "'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'" *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, "if the state court arrives at a conclusion opposite to that reached by [the

Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-13. A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.* at 413.

AEDPA establishes a deferential standard of review: "'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams*, 529 U.S. at 411). Additionally, while "'some increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence.'" *Id.* (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)). Finally, "if the federal claim was not adjudicated on the merits, 'AEDPA deference is not required, and conclusions of law and mixed findings of fact and conclusions of law are reviewed *de novo*.'" *Dolphy v. Mantello*, 552 F.3d 236, 238 (2d Cir. 2009) (quoting *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)).

### III. DISCUSSION

For the reasons discussed below, this Court denies the petition for habeas corpus. As a threshold matter, the due process claim is procedurally barred because the state court found that claim to be a record-based claim that is not subject to review in a Section 440 motion. However, in an abundance of caution, the Court has analyzed the merits of every claim and concludes that Petitioner's claims are entirely without merit.

A. Procedural Bar

1. Exhaustion

As a threshold matter, a district court shall not review a habeas petition unless "the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). Although a state prisoner need not petition for certiorari to the United States Supreme Court to exhaust his claims, *see Lawrence v. Florida*, 549 U.S. 327, 333 (2007), a petitioner must fairly present his federal constitutional claims to the highest state court having jurisdiction over them. *See Grey v. Hoke*, 933 F.2d 117, 119 (2d Cir. 1991). Exhaustion of state remedies requires that a petitioner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)) (alteration in original and quotation marks omitted).

Passage through the state courts, in and of itself, "is not sufficient." *Picard*, 404 U.S. at 275. To provide the State with the necessary "opportunity," the prisoner must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review), alerting that court to the federal nature of the claim and "giv[ing] the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also Duncan*, 513 U.S.

5

at 365-66. "A petitioner has fairly presented his claim only if he has informed the state court of both the factual and the legal premises of the claim he asserts in federal court." *Jones v. Keane*, 329 F.3d 290, 294-95 (2d Cir. 2003) (citation and internal quotation marks omitted). "Specifically, [petitioner] must have set forth in state court all of the essential factual allegations asserted in his federal petition; if material factual allegations were omitted, the state court has not had a fair opportunity to rule on the claim." *Daye v. Att'y Gen. Of N.Y.*, 696 F.2d 186, 191-92 (2d Cir. 1982) (en banc). To that end, "[t]he chief purposes of the exhaustion doctrine would be frustrated if the federal habeas court were to rule on a claim whose fundamental legal basis was substantially different from that asserted in state court." *Id.* at 191-92 (footnote omitted).

2. State Procedural Requirements

Similar to the failure to exhaust a claim, the failure to satisfy the state's procedural requirements will deprive the state courts of an opportunity to address the federal constitutional or statutory issues in a petitioner's claim. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). "[A] claim is procedurally defaulted for the purposes of federal habeas review where 'the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Reyes v. Keane*, 118 F.3d 136, 140 (2d Cir. 1997) (quoting *Coleman*, 501 U.S. at 735) (emphasis omitted). Where the petitioner "can no longer obtain state-court review of his present claims on account of his procedural default, those claims are . . . to be deemed exhausted." *DiGuglielmo v. Smith*, 366 F.3d 130, 135 (2d Cir. 2004). Notably, for exhaustion purposes, "a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." *Reyes*, 118 F.3d at 139 (citations and internal quotation marks omitted).

However, even where a plaintiff properly exhausts his claim, exhaustion "does not automatically entitle the habeas petitioner to litigate his or her claims in federal court. Instead, if the petitioner procedurally defaulted those claims, the prisoner generally is barred from asserting those claims in a federal habeas proceeding." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006) (citing *Gray v. Netherland*, 518 U.S. 152, 162 (1996); *Coleman*, 501 U.S. at 744-51)). "[T]he procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default." *Gray*, 518 U.S. at 162.

The procedural bar rule in the review of applications for writs of habeas corpus is based on the "comity and respect" accorded to state judgments. *House v. Bell*, 547 U.S. 518, 536 (2006). The purpose of this rule is to maintain the delicate balance of federalism by retaining a state's rights to enforce its laws and to maintain its judicial procedures as it sees fit. *Coleman*, 501 U.S. at 730-31.

Once it is determined that a claim is procedurally barred under state rules, a federal court may review such a claim on its merits only if the petitioner can demonstrate both cause for the default and prejudice resulting therefrom, or if he can demonstrate that the failure to consider the claim will result in a miscarriage of justice. *Id.* at 750. A miscarriage of justice is demonstrated in

extraordinary cases, such as where a constitutional violation results in the conviction of an individual who is actually innocent. *Murray v. Carrier*, 477 U.S. 478, 496 (1986). To overcome procedural default based on miscarriage of justice, petitioner must demonstrate that in light of new reliable evidence not presented at trial, "'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt'" and would require "'new reliable evidence . . . that was not presented at trial.'" *House*, 547 U.S. at 537 (quoting *Schlup v. Delo*, 513 U.S. 324, 327 (1995)).

3. Application

"The burden of proving exhaustion lies with the habeas petitioner." *Cartagena v. Corcoran*, No. 04-CV-4329, 2009 WL 1406914, at *3 (E.D.N.Y. May 19, 2009). The Court concludes that Petitioner has not met this burden with respect to his due process claim, as it was not "fairly presented" in state court. Petitioner never sought reversal of his conviction, but rather merely sought a sentence reduction under state law. As discussed *supra*, Petitioner on direct appeal argued to reduce his sentence under N.Y. Crim. Proc. Law 470.15(2)(c) and 470.20(6), claiming that it was harsh and excessive. Courts have correctly found that a prisoner's reliance on a state procedural law granting courts discretionary authority to reduce sentences does not "fairly present" a constitutional claim in state court. *King v. Cunningham*, 442 F. Supp. 2d 171, 181 (S.D.N.Y. 2006) (collecting cases); *Castillo v. Abrams*, No. 88-CV-1165, 1988 WL 96026, at *1-2 (S.D.N.Y. Aug. 24, 1988) ("Asking a state court to use its discretionary authority to reduce a sentence [under New York's Criminal Procedure Laws], without more, is not enough to alert the court that the claim is of constitutional dimension.") Accordingly, Petitioner's due process claim is unexhausted, and thus, cannot be reviewed by this Court.

However, Petitioner, through his § 440.10 motion to vacate, did seek reversal on the same grounds that he alleges in this petition—namely, (1) due process violations because the plea was not knowingly made; (2) ineffective assistance of counsel; (3) insufficient allocution; and (4) *Brady* and *Rosario* violations. Petitioner also argued that post-release supervision should not have been imposed. The Supreme Court of Suffolk County, through its § 440.10 order, made clear that the due process claim was procedurally barred because it was record-based. *People v. Wilens*, Ind. No. 01020-2005 (Sup. Ct. Suffolk Cnty. Sept. 10, 2010). Accordingly, Petitioner's claim that his plea was not knowingly and voluntarily made is procedurally barred because the court's ruling was based on an independent and adequate state procedural rule.[3]

In order to overcome the procedural bar, Petitioner must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. Petitioner has not satisfied this standard. Petitioner has not provided any

---

[3] The Court did not address Petitioner's claim that his allocution was insufficient and it would appear that this claim is not cognizable on a § 440.10 motion to vacate. However, when a state court fails to address a claim, a Court must review it *de novo*. *See Cotto v. Fischer*, 09 CV 9813, 2012 WL 5500575, at *39 (S.D.N.Y. Aug. 23, 2012). As a threshold matter, Petitioner only addressed this matter in a conclusory manner without any argument as to the specific challenge being made. Thus, the issue was not fairly presented to the state court. In any event, as addressed *infra*, the Court has reviewed this claim and finds it to be plainly without merit.

explanation for his failure to properly exhaust the due process claim. Moreover, Petitioner has failed to demonstrate any prejudice for his failure to exhaust, and he has not demonstrated that a fundamental miscarriage of justice will take place if the Court fails to consider the procedurally defaulted claims. *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992). In any event, that claim, as well as all of Petitioner's other claims, are without merit for the reasons discussed below.

B. Merits Analysis

1. Due Process Claim

Petitioner claims that his due process rights under the Fourteenth Amendment were violated because he was unaware of PRS accompanying his sentence. Therefore, he alleges that the plea was not made voluntarily, knowingly, and intelligently. As discussed below, this claim has no merit.

a. Legal Standard

"The longstanding test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (internal quotation marks and citations omitted)); *see also Parke v. Raley*, 506 U.S. 20, 28-29 (1992) (plea is valid when it is both knowingly and voluntarily made). Where "a defendant is represented by counsel during the plea process, and enters his plea upon the advice of counsel, the voluntariness of the plea depends upon whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *Hill*, 474 U.S. at 56 (internal quotation marks and citations omitted).

The Supreme Court has held that, under the Due Process Clause of the United States Constitution, a trial court can only accept a guilty plea which is done "voluntarily, knowingly, and intelligently, with sufficient awareness of relevant circumstances and likely consequences." *United States v. Adams*, 448 F.3d 492, 497 (2d Cir. 2006) (internal quotation marks and citations omitted); *accord Godinez v. Moran*, 509 U.S. 389, 400 (1993). Although a guilty plea "is not ordinarily subject to collateral attack," it "may be collaterally attacked if it was not knowing or not voluntary . . . ." *Salas v. United States*, 139 F.3d 322, 324 (2d Cir. 1998); *see also U.S. ex rel Scott v. Mancussi*, 429 F.2d 104, 107 (2d Cir. 1970) ("[A] conviction which is based upon an involuntary plea of guilty is inconsistent with due process of law and is subject to collateral attack by federal habeas corpus.").

"A plea is considered 'intelligent if the accused had the advice of counsel and understood the consequences of his plea, even if only in a rudimentary way,' and it is considered 'voluntary if it is not the product of actual or threatened physical harm, mental coercion overbearing the defendant's will, or the defendant's sheer inability to weigh his options rationally.'" *Manzullo v. New York*, No. 07 CV 744(SJF), 2010 WL 1292302, at *5 (E.D.N.Y. Mar. 29, 2010) (quoting *Miller v. Angliker*, 848 F.2d 1312, 1320 (2d Cir. 1988)). Indeed, a "plea of guilty entered by one fully aware of the direct consequences of the plea is voluntary in a constitutional sense unless induced by threats, misrepresentations, or perhaps by promises that are by their nature improper." *Bousley v. United States*, 523 U.S. 614, 619 (1998) (internal alteration, citations, and quotation marks omitted).

b. Application

Under New York law, the trial court should have advised Petitioner of the five-

year mandatory PRS. In *People v. Catu*, the Court of Appeals held that "[b]ecause a defendant pleading guilty to a determinate sentence must be aware of the postrelease supervision component of that sentence in order to knowingly, voluntarily and intelligently choose among alternative courses of action, the failure of a court to advise of postrelease supervision requires reversal of the conviction." 4 N.Y.3d 242, 245 (2005).

However, under AEDPA, this Court may only grant relief if the state court "unreasonably applied clearly established Federal law." *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations omitted) (quoting 28 U.S.C. § 2254(d)(1)). "'Clearly established Federal law' means 'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'" *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). Therefore, this Court cannot grant a petition for habeas corpus if the state court unreasonably applied *state* law; instead, this Court may only grant relief unless the state court unreasonably applied federal law that has been clearly defined by Supreme Court precedents (or was a result of an unreasonable determination of the facts in light of the record). *See Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) ("[T]his Court has held on numerous occasions that it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." (citations and internal quotation marks omitted)).

"Unfortunately for Petitioner, there is no clearly established Supreme Court precedent that a defendant must be advised of mandatory post-release supervision prior to entering a guilty plea. Many federal courts in this Circuit have recently come to this same conclusion." *Sanchez v. Keller*, 06-CIV-3370, 2007 WL 4927791, at *7 (S.D.N.Y. Dec. 4, 2007) (Report and Recommendation); *see also Facen v. Cully*, 787 F. Supp. 2d 278, 284 (W.D.N.Y. 2011) (stating that "the Supreme Court has never held that a mandatory term of post-release supervision is a direct consequence of a criminal conviction"); *Potter v. Green*, 04-CV-1343, 2009 WL 2242342, at *6 (E.D.N.Y. July 24, 2009) ("[T]here is no clearly established Supreme Court precedent that requires a state court judge to advise a defendant of mandatory PRS before accepting a guilty plea."). In fact, as noted by the Seventh Circuit, "the Court has expressly declined to decide such an issue in the very similar context of parole." *Lockhart v. Chandler*, 446 F.3d 721, 724 (7th Cir. 2006) (citing *Lane v. Williams*, 455 U.S. 624, 630 n.9 (1982)). This Court finds the analysis contained in these cases persuasive.

Therefore, because the Supreme Court has not ruled directly on this issue, the failure of the state court to advise Petitioner at his plea about the mandatory PRS is not a basis for habeas relief. *See Sanchez*, 2007 WL 4927791, at *8 ("[B]ecause the Supreme Court has never addressed the issue of whether mandatory supervised release is a direct consequence of one's conviction, the trial court's failure to inform Petitioner of his mandatory PRS cannot be a violation of clearly established federal law. In other words, Petitioner's claim is without merit because there is no clearly established Supreme Court precedent for the trial court to have unreasonably applied."); *see also Lane*, 446 F.3d at 724; *Facen*, 787 F. Supp. 2d at 284; *Menjivar v. Sears*, 06 CV 2854,

9

2007 WL 2274892, at *3 (E.D.N.Y. Aug. 7, 2007).[4]

In addition, although this could end the Court's inquiry, the Court notes that Petitioner must also demonstrate that "there is a reasonable probability that, but for the error, he would not have entered the plea." *Zhang v. United States*, 506 F.3d 162, 168 (2d Cir. 2007) (citation and internal quotation marks omitted). Petitioner provides no evidence that he would not have entered his guilty plea had the court informed him of the mandatory PRS, and it appears highly improbable that the PRS played any role in his decision to accept or reject the plea. In fact, during the sentencing hearing, Petitioner admitted that the plea bargain, struck by him and for his benefit, was "favorable."[5] (S. at 7.) More importantly, Petitioner was made aware of the PRS at his sentencing hearing. For each charge, the sentencing state judge, informed Petitioner of the mandatory five-year PRS accompanying the charges. (S. at 10.) At no time did Petitioner object to the PRS, indicate that he was unaware that PRS was mandated in accordance with state law, or state that he wished to withdraw his previously entered plea. Therefore, as in *Sanchez*, "Petitioner's claim—that the failure to inform him of mandatory PRS prior to the entry of his guilty plea was a violation of his due process rights—can be dismissed as harmless error, because even if he had know about the PRS, such knowledge would likely not have affected his decision." *Sanchez*, 2007 WL 4927791, at *9.

2. Ineffective Assistance of Counsel

Petitioner contends that he received ineffective assistance of counsel, specifically that his counsel failed to object to duplicate counts on the indictment, failed to file a Notice of Appeal, and failed to advise him of the PRS accompanying the guilty plea. As discussed below, this claim is meritless.

a. Legal Standard

Under the standard promulgated in *Strickland v. Washington*, 466 U.S. 668 (1984), a defendant is required to demonstrate two elements in order to state a successful claim for ineffective assistance of counsel: (1) "counsel's representation fell below an objective standard of reasonableness," *id.* at 680, and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694.

The first prong requires a showing that counsel's performance was deficient. However, "[c]onstitutionally effective counsel embraces a 'wide range of professionally competent assistance,' and 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 690). The performance inquiry examines the reasonableness of counsel's actions under all circumstances, keeping in mind that a "'fair assessment of attorney performance requires

---

[4] As stated *supra*, even if the state court did violate New York law, Petitioner is also not entitled to relief because this claim is procedurally barred.

[5] As Respondent notes, "All terms of incarceration were ordered to run concurrently, for an aggregate sentence of fourteen years for his sexual assaults and lewd behavior against eight children. Had petitioner gone to trial and been found guilty, as a second child sexual assault felony offender, petitioner faced a maximum sentence of two life terms, plus 48 years." (Resp. Opp. at 11.)

10

that every effort be made to eliminate the distorting effects of hindsight.'" *Id.* (quoting *Rompilla v. Beard*, 545 U.S. 374, 408 (2005)). In assessing performance, a court "must apply a 'heavy measure of deference to counsel's judgments.'" *Id.* (quoting *Strickland*, 466 U.S. at 691). "A lawyer's decision not to pursue a defense does not constitute deficient performance if, as is typically the case, the lawyer has a reasonable justification for the decision," *DeLuca v. Lord*, 77 F.3d 578, 588 n.3 (2d Cir. 1996), and "'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" *Id.* at 588 (quoting *Strickland*, 466 U.S. at 690-91). "However, 'strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.'" *Id.* (quoting *Strickland*, 466 U.S. at 690-91).

The second prong focuses on prejudice to a petitioner. A petitioner is required to show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "Reasonable probability" means that the errors were of a magnitude such that they "'undermine[] confidence in the outcome.'" *Pavel v. Hollins*, 261 F.3d 210, 216 (2d Cir. 2001) (quoting *Strickland*, 466 U.S. at 694). "'[T]he question to be asked in assessing the prejudice from counsel's errors . . . is whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilty.'" *Henry v. Poole*, 409 F.3d 48, 63-64 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 695). "'An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.'" *Lindstadt v. Keane*, 239 F.3d 191, 204 (2d Cir. 2001) (quoting *Strickland*, 466 U.S. at 691). Moreover, "[u]nlike the determination of trial counsel's performance under the first prong of *Strickland*, the determination of prejudice may be made with the benefit of hindsight." *Hemstreet v. Greiner*, 491 F. 3d 84, 91 (2d Cir. 2007) (internal citation and quotation marks omitted).

This Court proceeds to examine Petitioner's claim, keeping in mind that the habeas petitioner bears the burden of establishing both deficient performance and prejudice. *United States v. Birkin*, 366 F.3d 95, 100 (2d Cir. 2004).

b. Application

i. Failure to Object to Duplicate Counts on the Indictment

Petitioner alleges that his trial counsel failed to object to duplicate counts contained within the indictment. Specifically, Petitioner asserts that under N.Y. Penal Law § 130.75(2) and N.Y. Penal Law § 130.80(2), a defendant may not be subsequently prosecuted for any other sexual offense involving the same victim. Petitioner argues that he was charged twice for acts upon the same victim under Counts I and III, and for Counts II and IV, and that he suffered prejudice as a result of the his attorney's inaction.

First, this Court finds defense counsel's conduct was not deficient because he sought to have the indictment dismissed on any plausible grounds. Defense counsel filed a motion for the trial court to review the Grand Jury minutes and sought dismissal of the charges. The court, in response to counsel's motion, concluded that the minutes were sufficient and denied counsel's application to dismiss or reduce the charges. *People v. Wilens*, Ind. No.

11

1020-2005 (Sup. Ct., Suffolk Cnty. July 26, 2005).

Second, Petitioner has failed to show that these alleged duplicate counts caused any prejudice and thus fails the second prong under the *Strickland* test. The New York legislature was careful to avoid double jeopardy concerns under N.Y. Penal Law § 130.75(2) and § 130.80(2) by enacting N.Y. Penal Law § 70.25(2)(e). N.Y. Penal Law § 70.25(2)(e) states:

> Whenever a person is convicted of course of sexual conduct against a child in the first degree as defined in section 130.75 or course of sexual conduct against a child in the second degree as defined in section 130.80 and any other crime under article one hundred thirty committed against the same child and within the period charged under section 130.75 or 130.80, the sentences *must run concurrently*.

N.Y. Penal Law § 70.25 (2)(e) (emphasis added). At sentencing, Petitioner was sentenced to fourteen years and seven years for Counts One and Three, respectively. For Counts Two and Four, the state judge again sentenced the Petitioner to fourteen and seven years, respectively. The sentences were to run concurrently, not consecutively. Therefore, Petitioner was not subject to prejudice, and his claim must fail.

Furthermore, by pleading guilty, the Petitioner waived any argument that counsel was ineffective for failing to challenge the indictment. *See Schwartz v. Connell*, 05 CIV. 10305, 2006 WL 3549660, at *5 (S.D.N.Y. Dec. 6, 2006) ("A motion to dismiss for a duplicitous indictment is similar to a speedy trial motion in that both can result in a dismissal of charges against the defendant. Both errors, however, are rendered irrelevant in the face of defendant's plea of guilty since this admission is, in most cases, convincing factual evidence of actual guilt."); *People v. Thomas*, 768 N.Y.S.2d 519, 520 (3d Dep't 2003) (holding a claim of ineffective assistance of counsel, predicated on counsel's failure to challenge the indictment, was waived as the alleged failures did not undermine the voluntariness of defendant's guilty plea).[6]

ii. Failure to File a Notice of Appeal

Petitioner claims that his trial counsel was ineffective because counsel did not file a Notice of Appeal. In *Roe v. Flores–Ortega*, 528 U.S. 470 (2000), the Supreme Court applied the *Strickland* test with regard to a claim that counsel was constitutionally ineffective for failing to file a Notice of Appeal. The Court noted that it had "long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Id.* at 477. However, the Court held that, in cases where the defendant "neither instructs counsel to file an appeal nor asks that an appeal not be taken," the first question is whether counsel "in fact consulted with the defendant about an appeal." *Id.* at 478. If the attorney consulted with the defendant, counsel "performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." *Id.* If, however, counsel has not consulted with the defendant, the relevant inquiry is "whether counsel's failure to consult with the defendant itself

---

[6] The Court notes that, for the reasons discussed *infra*, Petitioner has not made any plausible argument that his guilty plea was not voluntary and intelligent that would allow him to now argue that this argument should not be waived.

12

constitutes deficient performance." *Id.* The Court rejected a bright-line rule that counsel must always consult with a defendant regarding an appeal. *Id.* at 480. Instead, the Court held that "counsel has a constitutionally-imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal … or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* In making this determination, courts should consider "whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings." *Id.* Where a defendant pleads guilty, courts should consider factors such as "whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights." *Id.* If the court determines that counsel's performance was deficient, the court must turn to the second prong of the *Strickland* rule— whether counsel's deficient performance prejudiced the defendant. "[T]o show prejudice in these circumstances, a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* at 484. If so, a presumption of prejudice arises. *Id.*

In the instant case, Petitioner, in his *pro se* appellate brief, repeatedly states that he attempted to contact and inform his attorney to file an appeal, but his attempts were futile. (Pet'r's Habeas Pet. at 3.) Assuming that no such consultation occurred, the relevant question becomes whether "there is reason to think either (1) that a rational defendant would want to appeal, or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Flores–Ortega*, 528 U.S. at 480.

Petitioner pled guilty, which "reduces the scope of potentially appealable issues" and "may indicate that the defendant seeks an end to judicial proceedings." *Id.* However, Petitioner has a right to appeal, and his attorney must respect this right. Assuming *arguendo* that counsel's performance was deficient for failing to appeal or failing to consult Petitioner about an appeal, that deficiency did not create any prejudice and fails the second prong of *Strickland*. Petitioner filed his own Notice of Appeal in a timely manner. Subsequently, Petitioner was assigned appellate counsel. Appellate counsel filed a motion with the Appellate Division to reduce Petitioner's sentence and Petitioner was able to file his own *pro se* supplemental brief. Not only did appellate counsel raise what he believed to be a meritorious issue on appeal, but Petitioner himself raised his own issues. Both motions were heard and subsequently denied. Therefore, Petitioner did not suffer any prejudice. *See id.* at 484 (rejecting rule that failure to file appeal results in prejudice *per se* because this rule "ignores the critical requirement that counsel's deficient performance must actually cause *the forfeiture of the defendant's appeal*.") (emphasis added).

iii. Failure To Advise Him Of The Mandatory PRS Accompanying The Guilty Plea

Petitioner alleges his defense counsel was ineffective for failing to advise him of the mandatory post-release supervision, which accompanied his guilty plea. This argument fails the second prong under the *Strickland* test because Petitioner cannot

13

show prejudice based on his lack of knowledge. Under *Strickland*, a habeas petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Nothing in the record indicates that Petitioner would not have pled had he been informed of the mandatory PRS. *Walker v. Pearlman*, 556 F. Supp. 2d 259, 265 (S.D.N.Y. 2008) (holding that knowledge of a five-year PRS period would have not changed the defendant's plea).

Petitioner does allege that, had he known about the PRS, he would not have pled guilty. In fact, Petitioner was made fully aware of PRS at his sentencing hearing, and made no objection or any attempt to withdraw his guilty plea. In his *pro se* supplemental brief to the Appellate Division on appeal, Petitioner again did not seek to withdraw his guilty plea. Furthermore, as stated above, had Petitioner gone to trial and been found guilty of the charges, he faced two life sentences. In addition, any period of incarceration connected with these charges carries with them a mandatory period of post-release supervision. N.Y. Penal Law § 70.80(3). Under the circumstances, even assuming *arguendo* the allegation of ineffective assistance to be true, there is no basis to conclude that Petitioner suffered any prejudice under the second prong of *Strickland*.

3. Insufficient Allocution

Petitioner alleges his allocution was insufficient in establishing the elements of the crimes of which he was convicted. For the reasons stated, the Court finds this claim to be without merit.[7]

---

[7] The state court did not address Petitioner's

i. Allocution Under Penal Law § 130.75(1)(a) (Course of sexual conduct against a child in the first degree)

In analyzing the transcript of the plea, it is clear that Petitioner provided a sufficient allocution for each element of the crimes charged. N.Y. Penal Law § 130.75(1) (Course of sexual conduct against a child in the first degree) reads:

> A person is guilty of course of sexual conduct against a child in the first degree when, over a period of time not less than three months in duration:
>
> (a) he or she engages in two or more acts of sexual conduct, which includes at least one act of sexual intercourse, oral sexual conduct, anal sexual conduct or aggravated sexual contact, with a child less than eleven years old

N.Y. Penal Law § 130.75(1). Under this statute, the prosecutor must show that over a three-month period or more, the defendant engaged in at least two acts of sexual conduct.

Petitioner admitted in great detail to the specific oral sexual conduct between himself and the victims, which occurred well over a three-month period. Petitioner also admitted that these victims were children under the age of eleven. In particular, during the allocution, petitioner admitted in part that,

---

contention that his allocution at his plea was insufficient, and thus, this claim is not entitled to AEDPA deference. *See, e.g.*, *Bell v. Napoli*, 08 CIV 9900, 2010 WL 8039333, at *23 n.13 (S.D.N.Y. Aug. 24, 2010) (Report and Recommendation). However, even under *de novo* review, Petitioner's claim is plainly without merit.

(1) within a three-month period between 2002 and 2004, on at least three occasions at his residence in Suffolk County, he subjected the female child "DM" (who was under the age of eleven) to sexual contact and sexual intercourse for Petitioner's sexual gratification (P. 7-8); and (2) within a three-month period from between September 2003 and July 2004, on at least three occasions at his residence, Petitioner had sexual contact with the male child "DM" (who was under the age of 11), including one incident of oral sexual conduct. (P. 8-12.) Petitioner's allocution covered all of the requisite elements and was sufficient to find him guilty of the charges under Penal Law § 130.75(1)(a) (Course of sexual conduct against a child in the first degree).

    ii. Allocution under Under Penal Law § 130.80(1)(a) (Course of sexual conduct against a child in the second degree)

In relevant part, N.Y. Penal Law § 130.80(1)(a) (Course of sexual conduct against a child in the second degree) reads:

> A person is guilty of course of sexual conduct against a child in the second degree when, over a period of time not less than three months in duration:
>
> (a) he or she engages in two or more acts of sexual conduct with a child less than eleven years old.

N.Y. Penal Law § 130.80 (1)(a). Under this statute, the prosecutor must show that over a three-month period or more, the defendant engaged in two or more acts of sexual conduct with a child less than eleven years old. "Sexual conduct" means sexual intercourse, oral sexual conduct, anal sexual conduct, aggravated sexual contact, or sexual contact. N.Y. Penal Law § 130.00 (10).

The plea transcript provides sufficient evidence that Petitioner is guilty under N.Y. Penal Law § 130.80(1)(a) (Course of sexual conduct against a child in the second degree). As discussed supra, Petitioner admitted to sexual conduct with a child under the age of eleven. He also admitted that this conduct occurred for a period of at least three months. Moreover, he allocuted to conduct that clearly fell within the definition of oral sexual conduct. (P. 9-11.) Thus, each element under Penal Law § 130.80(1)(a) was satisfied.

Petitioner furthers argues that dialogue between the prosecutor and himself during the plea was insufficient to support the charge because his admission was preceeded by six denials. (Pet'r's Habeas Pet. at 2.) He asserts that the state court should have, "looked further into the reasons of denials of alleged acts before accepting the insufficient pleas." (*Id.* at 2.)

The Court disagrees. By looking at the totality of the guilty plea proceeding, instead of a few isolated lines as Petitioner suggests, it is clear that the plea was voluntary. There is no evidence that the prosecutor or anyone else threatened Petitioner to induce a coerced plea. The court simply gave Petitioner another opportunity to explain what had occurred. Subsequently, Petitioner provided a sufficient allocution and made a proper plea. In short, there is no basis to challenge the Petitioner's statements at the guilty plea, including the voluntariness of those statements.

15

iii. Allocution Under Penal Law § 130.65 (Sexual Abuse in the First Degree)

N.Y. Penal Law § 130.65 (Sexual Abuse in the First Degree) states that "[a] person is guilty of sexual abuse in the first degree when he or she subjects another person to sexual contact: … [w]hen the other person is less than thirteen years old and the actor is twenty-one years old or older." N.Y. Penal Law § 130.65.

The record is clear that the prosecution satisfied every element of this charge. Petitioner described in great detail sexual acts which satisfy subsection 4 of N.Y. Penal Law § 130.65. Petitioner, by his own admission, subjected his victims, who were all under the age of thirteen, to sexual contact. Because the Petitioner is older than twenty-one years of age, the elements are satisfied, and thus his allocution was sufficient.

iv. Allocution Under Penal Law § 260.10(1) (Endangering the Welfare of Child)

Lastly, under the N.Y. Penal Law § 260.10(1) (Endangering the Welfare of Child):

A person is guilty of endangering the welfare of a child when:

1. He or she knowingly acts in a manner likely to be injurious to the physical, mental or moral welfare of a child less than seventeen years old or directs or authorizes such child to engage in an occupation involving a substantial risk of danger to his or her life or health.

N.Y. Penal Law § 260.10(1). There is no requirement under this statute that the physical, mental or moral welfare of the child be in fact injured, and New York courts have held that actions similar to the ones admitted to by Petitioner violate the statute. *See*, *e.g.*, *People v. Rice*, 17 N.Y.2d 881 (1966); *People v. Dunavin*, 173 A.D.2d 1032, 1034 (3d Dep't 1991) (evidence demonstrating that defendant showed minors sexually explicit film combined with touching minor's buttocks legally sufficient to establish crime of endangering welfare of child). The Court concludes that Petitioner's allocution under Penal Law § 260.10(1) (Endangering the Welfare of Child) was sufficient to satisfy all elements of the crime alleged. (P. 14-16.)

In sum, Petitioner's claim that his allocution did not satisfy the elements of the crimes charged is plainly without merit.

4. *Brady* and *Rosario* Violations

Petitioner also claims *Brady* and *Rosario* violations, alleging that the prosecution withheld certain exculpatory evidence— namely, the victims' medical records and a finding of 'Not Guilty' in his Family Court case, which related to this criminal matter. (Pet. at 3-4) For the reasons set forth below, the Court finds that Petitioner's claim is without merit.

a. Legal Standard

For the purposes of federal habeas corpus review, a habeas petition can only be granted to remedy some violation of federal law. Because the obligation to turn over *Rosario* material arises under state law, to the extent that this claim is based on a *Rosario* violation, it must fail. Thus, the only question is whether the prosecution violated *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny. *See King v. Greiner*, No. 02-CV-5810, 2008 WL

16

4410109, at *38 n.41 (S.D.N.Y. Sept. 26, 2008).

Under *Brady*, the "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. In order to prevail on a *Brady* claim, petitioner must demonstrate that material evidence favorable to his case was not disclosed to him. *See Kyles v. Whitley*, 514 U.S. 419, 437-38 (1995) ("[T]he prosecution's responsibility for failing to disclose known, favorable evidence rising to a material level of importance is inescapable."). "Such evidence is material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Strickler v. Greene*, 527 U.S. 263, 280 (1999) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)). Failure to disclose such material evidence merits relief only if the prosecution's failure "'undermines confidence in the outcome of the trial.'" *Kyles*, 514 U.S. at 434 (quoting *Bagley*, 473 U.S. at 678). Furthermore, "[t]here is never a real '*Brady* violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Strickler*, 527 U.S. at 281.

b. Application

Petitioner argues that the outcome of his case would have been different if the prosecutor submitted medical records and a Family Court verdict of 'Not Guilty' of sexual abuse. Analyzing these claims, the Court finds them to be meritless. With regard to the Family Court adjudication, Petitioner makes conclusory statements without providing a shred of evidence before the Court beside his self-serving declaration. The state record is devoid of any documentation from Family Court, which would be classified as exculpatory under *Brady*. Additionally, Petitioner failed to produce an affidavit from his attorney attesting to a favorable adjudication in the Family Court. In fact, Respondent submitted to the state court, in response to his Section 440 motion, court documents from Family Court indicating that the abuse petitions were granted on September 23, 2005. (Opp. to Section 440 Motion, Ex. B.)

In any event, Petitioner was presumably present in Family Court during the proceedings. Therefore, he was aware of the evidence allegedly withheld, removing it from the scope of *Brady* material. Lastly, as noted above, a final Family Court disposition took place on September 23, 2005. Petitioner pled guilty in Criminal Court on August 30, 2005. There can be no argument that this disposition, which took place later in time, could have possibly influenced the outcome of his guilty plea (which had already taken place).

Similarly, the medical records at issue are neither exculpatory nor favorable to Petitioner. The medical records specifically state that the victims' medical history indicates that "inappropriate sexual contact" occurred. This statement is certainly not favorable to Petitioner. Although the records state that there were no abnormal findings *during* the exam, this has no bearing on whether the victims were abused in the past by Petitioner. Moreover, the medical record qualifies the examination by stating that the alleged acts would not cause "permanent changes in the patient's physical exam." Therefore, the medical records do not exculpate Petitioner and, thus, cannot be classified as *Brady* material.[8]

---

[8] In any event, such claims cannot provide a basis for

In sum, Petitioner's *Brady* and *Rosario* claims are without merit and do not provide a basis for habeas relief.

IV. CONCLUSION

For the reasons set forth herein, this Court finds that Petitioner has demonstrated no basis for habeas relief under 28 U.S.C. § 2254. All of Petitioner's claims are plainly without merit. Therefore, the petition for a writ of habeas corpus is denied. Because Petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall be issued. *See* 28 U.S.C. § 2253(c)(2). The Clerk of the Court shall enter judgment accordingly and close this case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated:   December 31, 2013
         Central Islip, New York

\* \* \*

Petitioner is proceeding *pro se*. Respondent is represented by Thomas Spota, District Attorney of Suffolk County, by Michael Herman Blakey, 200 Center Drive, Riverhead, NY 11901.

---

habeas relief. The Supreme Court has never held that exculpatory material must be disclosed prior to a guilty plea. Therefore, a state court decision on that issue could not have been "contrary to clearly established federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A habeas petition may not be granted on an issue of law that has not yet been resolved. *See Friedman v. Rehal*, 618 F.3d 142, 154–55 (2d Cir. 2010) (discussing *Ruiz* and holding that, because no clearly established federal law has been established as to the application of *Brady* to a guilty plea, such a claim was not cognizable on habeas review).